Good afternoon. My name is Charles Hampton on behalf of Al Hill, III, the appellant in this case. And I'm sure in reading the papers, the Court realizes that there's a long history of litigation between That is the understatement of the day, if not the month, if not the year, because we are just in the second day of the month. And I am fully conceding that point. And it's easy to get bogged down, I think, in some of the history and salacious details of the litigation in this case. But what's present before this Court today, I believe, is a relatively straightforward issue on whether the federal district court, Judge Lindsey in this case, whether he erred by issuing an injunction that cut short a probate court proceeding that he had previously deferred to. Well, to cut even further to the chase, we have to address our jurisdiction first of all. So let's say hypothetically we were to reverse in your favor. What actual relief could we award to you such that this case would not be moot? That's a great question, and there are several areas of relief that I believe this case would not be moot. First of all, if the court were to reverse and negate the injunction, so reverse and render the injunction, the probate court still has jurisdiction of the case. Still has jurisdiction of what? Well, the probate is still open. The court could issue an order that allows us to go back to the probate court and ask for a reconsideration, for example, of the order. It's already gone to the Court of Appeals, right? It's gone to the Court of Appeals, but because of Judge Lindsey's action in granting the injunction, we under protest had to withdraw our notice of appeal. So there's not a pending order that we could appeal to the state appellate court right now, but we could go back to the probate court and ask for perhaps a reconsideration of what we believe is a wrong ruling by the probate court that with some circular logic prevented this exact issue from coming forward and that that issue could then move up the Texas state appellate issue. Well, and I'm sure counsel on the other side is more versed than you in just what is the status in probate court, but surely something has moved along in that court. We're not where we were when your client went in challenging the two wills. That's exactly right, and this goes to the Church of Scientology case that we cite in our brief that simply because we cannot get back to our original status quo, status quo ante, doesn't mean there isn't potential relief that could be awarded by reversing Judge Lindsey's order in this case. What potential relief? For example, going back to the probate court and asking to reconsider the probate of the will and allow my client to put on evidence to— I'm sorry. My question wasn't very good, which is true of most of them. But surely, I mean, where are we in the probate court now? What stage? Hasn't there been some disbursement of funds? And there may be some. The answer is I'm not entirely clear, and I believe counsel who is probably going to elucidate better. There's not been a full disbursement of funds that I don't believe there is. There may be some clawback. I don't know. But there certainly is some potential relief that we'd have to find out what stage we are when we get to the probate court. But there is— What would your relief be? Because you come up with the argument, oh, we're not contesting the will. We're contesting that it is the will. Right. And so that will— So if it's not the will, there is some other document that is the will, and you don't get anything under that, you being your client. There is a will that was in effect, I believe, prior to the settlement agreement, and if that's the last will and testament, I don't believe that necessarily is correct. But your client gave up his claim to any funds, the right to contest any will. Right. We wouldn't—we would not be contesting—either it goes in testate without a will or we would not be contesting a will that is in probate. We would not be contesting that will or any property disbursement under that will. But that doesn't mean that a will that we believe has provisions in it that are onerous to my client but that— That are what? Onerous to my—that don't provide distributions to my client or don't— Can we take judicial notice of any document that might disperse any—request any funds to your client? Are you aware of such a will? I am not. But there is—it could go in testate as well if there's not a will. I mean, this is— How many lawyers are you down the chain? How many lawyers has Mr. Hill had, sets of lawyers? I couldn't—I actually don't know the answer to that question. I know there's been multiple, and there was different counsel in the probate court as well. But getting back to the mootness argument, though, because there is one other issue that, regardless of what happens in the probate court, another aspect of Judge Lindsey's order was to award attorney's fees that my client has to pay to the other side in connection with the proceedings in the probate court. And that's currently in front of Magistrate Tolliver for a recommendation, I believe. I mean, he has not issued the actual dollar amount. You're saying attorney's fees preserves, even if you thought it was moot because you can't get any relief because you let your appeal deadlines run, the appellate court lost jurisdiction, still not moot because of attorney's fees? Because of Judge Lindsey's order in his permanent injunction that attorney's fees. So you say it's not moot because the probate—you could go back to probate court and say, we want to reinstate our challenge, right? Right, or issue an order that could then be appealed, and so the process can run through in the state court procedure. Which already happened, right? It happened, except under protest we were required to withdraw our appeal. There's nothing you could have done to have preserved the state appellate process. Not without running afoul of a federal district court's judge's order. Right, but didn't the state appellate court say, look, if you want to keep this going, you have to comply with Texas rules of appellate procedure. We filed a motion for reconsideration and stay in front of Judge Lindsey to prevent—to give us the opportunity to preserve the appeal. We actually then filed a motion in front of the Fifth Circuit. Right, but those were all denied. So, I mean, I understand the position that you're saying, but what I don't understand is does it create an exception to mootness, since that's a jurisdictional issue? I don't believe it does, because I do believe we can—there are— we can go back to the district court—I mean, to the probate court and, again, ask for an order that would then be subject to state court appeal. Now, whether it's successful, I mean, it may not be, but we certainly have that right because the probate court still has jurisdiction. All right. And then as far as this court's jurisdiction on the mootness issue, I think the attorneys' fees issue by itself gives this court jurisdiction. Now, wait, you're not—you are saying, you're saying that when Judge Lindsey ordered attorneys' fees and he told you to file papers, now you're telling us, which is the first time I believe we've heard it, that that question is before the master judge because one consideration here is to— is, you know, the question of attorneys' fees, and that's going on, and I'm sure it will be augmented with how many thousands of dollars have been—had to be spent on this appeal. But you're not saying that alone keeps this appeal from not being moot. I mean, there's a difference between dismiss this appeal as moot as vis-a-vis the whole case being moot. Well, the issue is that Judge Lindsey's permanent injunction had several aspects, one of which required us to remove—to withdraw our appeal, but the other is an after-the-fact order for us to pay the attorneys' fees for the proceedings that took place in the probate court, which getting to the substance of— Are you appealing that part of the injunction? That part is being appealed as well. We're seeking to reverse the entire injunction. Yeah, because the way you just stated it, the part of the injunction that says you have to take down your state appeal, I don't understand how that's not moot. Your state court appeal is gone. There's nothing the state court can do to revive it. There's nothing that the— State appellate court. State appellate court, but we could go back to the probate court, who still does have jurisdiction, and ask for some relief. Yeah, but that just means that the part of the injunction that respects the state court appeal is obviously moot. There's nothing the state appellate court can do with respect to that appeal. It's gone, isn't it? I believe that's correct as far as the state court appeal, but that doesn't make this appeal moot. To the extent it asks for a reversal of the injunction with respect to the state appellate court proceeding, it is. Well, but the injunction was farther than that because the injunction said we cannot make any argument in the probate court or in the— I take your point on that. And we were required to withdraw the order or the appeal. Getting, I think, to the substance of the argument, I mean the elephant in the room is does the no contest provision preclude challenging or requiring the proponents of the will to meet their burden to prove, in fact, that it is a real will? I heard you respond to Judge Barksdale that your challenge to the will doesn't come within the no contest provision because you're challenging whether the will that's been offered is the will. Right. Okay, now on what basis are you challenging that in the probate court? There are several bases, but the primary one is there are clear discrepancies, and it's in the record and I can give the court the citations. There are clear discrepancies with the signature of the will. There's multiple versions. That's what I was getting at. So a challenge to the signature on the will, in your view, doesn't come within the no contest provision? Well, a good example— Does that work? Let me just give a good example because that brings up the chicken and the egg. Basically what we have here is a chicken and egg situation. And this is a very unique situation. But there are other areas of the law where the court has more familiarity, which I think a similar issue comes up. A good example is an arbitration clause, an arbitration clause in a contract. And the arbitration clause says all disputes must be arbitrated. And if someone were to file a lawsuit in violation of that, then clearly they could either go to the courthouse and get an injunction or a motion to dismiss or something along those lines because the parties have agreed that it's bound by arbitration. But if the argument is not that I'm contesting the arbitration clause or the scope of the arbitration clause or something along those lines, but if it's I didn't even sign this document. I didn't sign this contract. That signature is a forgery. That's the situation where you're not contesting the arbitration clause. You're contesting the fact that this is not even a document. I mean, this is not even a contract that I'm a party to. Okay. I see. So you're saying, I think you're saying, that if the proponents of the will come into probate court and say here's the will and your challenge is that signature is a forgery. Right. That is not a contest to the last will and testament of Al, Jr. Right, because the document itself is not the last will and testament. So what would the no contest clause cover then? It would cover, for example, if I'm challenging a provision in the will as to the disbursement of funds. It would be, and it's, that would be one example. But it's also a little, what's weird here or different is usually these no contest provisions are in the will itself. Here you have a separate document that was executed four years before the alleged will at issue in this case. And so the. Well, I guess if a challenge to the signature, let's just entertain that for a second for the sake of argument. Why isn't the same challenge an additional action lawsuit or legal proceeding challenging the disposition of his property, which is also in the no contest? Because it's the same argument, which is you're not challenging the disposition of property if your challenge is the document itself is not a valid document. It's not as clean, I grant you that, but it's the same concept. Because how can I be making a challenge to the disposition of property? That's not what I'm doing. What the appellant is saying is that's not even a last will and testament. The other issue, just briefly before my time runs out, I just want to highlight for the court is the injunction itself. We're obviously standing on our papers for the arguments, but one key argument relates to irreparable injury and the lack of irreparable injury in this case. It's black letter law that in order to issue a permanent injunction, there has to be proof of irreparable injury. Here there really is not because you have two situations. You have one, the will is valid. It's a valid signature. Your time has expired. I appreciate it. Thank you. May it please the court. I'd like to begin my argument, Judge Barksdale, and try to respond directly to your question about where we are in the probate because I think it also goes to the significance of why Judge Lindsey entered an injunction. Judge Lindsey has been very patient with this case and its history. Tons of warnings have been issued prior to this injunction. Where we are in the probate is that the will has been probated. However, there has not been full distribution of funds. Al Hill Jr.'s will, which is in the record of this case, provided for significant gifts to charity. He was a charitable person. He wanted to leave a significant amount of estates as charity. Those charitable dispositions have not occurred because we're still dealing with this problem and with Al III attempting to interfere with the estate.  And, of course, if gifts had been made off to third parties and charities, it would be very difficult to get them back one day. We have a situation, though, where the district judge has been very patient. The order that is before the court is the injunction order, and it is mostly moot. And I do want to be very clear. I don't think it's entirely moot. That's correct, Your Honor, and I want to be very clear about that. I say mostly moot because most of the appellate briefing is all about the Anti-Injunction Act and the interference with the state court appeal. That's absolutely moot. There is part of the injunction order that's not because the injunction order also has a forward-looking injunction to prevent any additional contest to the will or proceedings. That is not moot. But this appeal, I assume you would argue, is moot. Your Honor, I wish I could tell you that. I would say it's 90 percent moot. And let me explain. The appeal and the focus of the appeal, and from the briefing, what you read about is reinstate the state court appellate proceeding or let us go back to the probate about the will. That is all moot, and I'm going to talk briefly about probate jurisdiction. But the reason I can't say 100 percent it's moot is because there is the forward-looking part of the injunction. For example, in the injunction paragraphs, paragraph 2 is an injunction against appealing Judge Warren's order. That's clearly moot. Paragraph 3 is an injunction about appealing Judge Warren's order. That's moot. Paragraph 1 is a broader injunction about contesting the will, which would stop Al Hill III from going back to the probate court again if something happened and trying once again to upset this estate. That's not moot. That injunction is still in place. You said paragraph 1 is not moot because it's forward-looking? Correct. Correct, Your Honor. That is really the part of the injunction that's not moot. I mean, there's the additional paragraphs. So we could say if we said the estate part of it is moot, the state court appeal is moot, you agree with him they could go back tomorrow and ask the probate court to reconsider? Absolutely not, and I'd like to talk about probate court jurisdiction, and that's what Al Hill Jr.'s arguments are missing. So why isn't it moot? And, Your Honor, I'm going to cite a case that's not in our briefing, but it's because the mootness challenge, of course, comes up as the Appellee's brief and had not had a challenge to respond to their reply brief. N. Ray Jackie, which is 506 Southwest 3rd, 550, heading notes 9 and 10, provides a good summary of probate court jurisdiction. Essentially what happens in the probate court is there are certain types of orders that are treated as final judgments even though the entire probate has not been finished or resolved. An example is a probating of a will. When you have that final order, which is what is necessary to take an appeal, and Al Hill III recognized that the order sustaining the objections to his will contest in probating the will and appointing Ms. Kelleher as the executor, that qualifies as a final order for probate for the purposes of appeal. As the N. Ray Jackie court explains, the trial court's plenary jurisdiction only continued for, I believe it's another 30 days. It's just like if it was a final judgment following a trial. It's one of those things where you have piecemeal orders. It's not a perfect analogy, but it's like bankruptcy. You can have appeals out of a bankruptcy proceeding, and that appeal, when the order is entered, it goes on appeal whether the appeal is affirmed or dismissed. It's a final order. It is not subject to collateral attack in a subsequent proceeding. So Al Hill III cannot go back to the probate court and to ask for reconsideration of the order. The probate court has lost jurisdiction because that order is final with the dismissal of the appeal. You're saying that's moot for reasons that are similar to why the injunction with respect to the state appellate process is moot. Yes, that is exactly right. It's the same issue. I misunderstood what you said is not moot because of the forward-looking provisions. What is not moot? The fact that given the history of this case, given the behavior, the repeated violations of court orders, the violations of the injunction, we have a federal court order telling him, knock it off. And while it's moot, if he tries to go forward to assert a new proceeding in the state courts to interfere with the disposition of property, he should be held accountable for violating Judge Lindsey's federal court injunction. That injunction was necessary. I think it's well justified by the history of this case. That portion of the injunction looking to forward-looking conduct is not moot. The Newby case that we've cited. Paragraph 1 of the injunction. Yes, Your Honor. And it also gets picked up, I believe, in some of the subsequent paragraphs after the numbered paragraphs when it talks about counsel not being able to take certain actions. But as this court recognized in the Newby case that we've cited in our briefing, an injunction against future actions that doesn't have any Anti-Injunction Act implications at all. It's perfectly fine. Courts deal with vexatious litigants all the time. And one of the ways they're dealt with is with an injunction requiring them to stop filing lawsuits. That's what the parties were hoping for. That's what Judge Lindsey's order says. We have cited some examples in the briefing of the history of this case, and I know this court has seen quite a bit from this case. But the orders that have led to this injunction, and in fact the contempt ruling that has been entered since the injunction, didn't come just out of the blue. There's been warnings throughout this case. We have examples of warnings that we cited in our brief from this court from 2014, the district court from 2014. But just in preparing for the argument, I thought I would highlight one from 2017, so even more recent. Page 21147 of the record, Judge Lindsey. The court has been patient without free. However, the record indicates that he is dismissive of the court and he believes he is exempt from complying with court orders or that he's endowed with some kind of special dispensation when it comes to such compliance. Judge Lindsey, I think, as this court knows, is a very even-keeled, patient man. And he's the one entering these orders because we are nine years. What if Judge Lindsey was wrong about the law? Doesn't that taint the forward-looking injunction? Well, Your Honor, he's not wrong about the law. If he made a legal error— I'm just saying hypothetically. Well, Your Honor, if he made a legal error in entering the injunction, I certainly understand where the question is coming from, but that was the next thing I'd like to talk about because the injunction forward-looking is not only justified based on the prior history of this case. It's justified based on the very contract clauses and final injunction clause that are issued before the court. And, Judge Duncan, I believe you were the one pointing out the language in the no-contest clause. It's not just you can't challenge the will. It also prevents challenging the disposition of Al Junior's property. That's broad. If you read the clause as a whole— Were there two wills presented for probate or not? One will was presented for probate, Your Honor. And I think it's worth pointing out the will is in this Court's record. It was presented to the Court. All the formalities were required by Judge Warren. The will is supported by an affidavit signed under oath by Margaret Kelleher and Cersei Ferguson before a notary. Ms. Kelleher and the notary were at the hearing. Ms. Kelleher testified at the hearing. Judge Warren did not excuse any of the formalities for proving up a will. All she did is told Al III, you agreed you weren't going to contest the will. We're not going to allow you to contest the will. Where's the second will? Where did it come from with discrepancy in signatures? Your Honor, as far as the second will goes, there's no substantive difference. There's no explanation in the record for that. What we do have is the testimony and the support for the actual will from the signatories to say this is the valid will. There's no substantive differences. I mean my best guess is there's some kind of maybe a clerical issue or something, but the record is silent as to what happened. We have a will proved up with sworn witnesses, proved up with a notary in compliance with Texas law, with no one other than Al III objecting and his children objecting. He's the one who gave up his right to object. In paragraph 29 of the final judgment, it's in a waiver of standing section. I mean how clear can you get? He's waiving his standing. He received over $100 million. In return, his father was getting the benefit of not having Al III obstruct the estate. He's trying to retrade the deal. Judge Lindsey was correct because if you read the plain language of the settlement agreement and final judgment, it's very clear as to what was barred. I do want to briefly talk about Texas law on will contests because one of the arguments, you heard a little bit of this today, but you see it a lot in the briefs, is to say, oh, we're not contesting the will. We're just trying to make sure that the proponents of the will have to meet all their formalities. And then, of course, they say that's not the signature and all these other excuses that are classic will contests. The problem with that argument, I would suggest that the court take a look at the Croucher v. Croucher case from the Texas Supreme Court. That is a case, the opening line from the Texas Supreme Court in the case was this is a will contest, period. And then it goes on to describe what was at issue. Husband dies. Wife is moving for probate of the will. The children opposed and said, no, dad did not have capacity. That will is not valid. Same posture AL-3 is in. Didn't matter. Didn't matter. Supreme Court said this is a will contest. This is exactly the kind of conduct AL-3. I understand the facts are not my hypothetical. But hypothetically, if there were two different wills with signatures that didn't match, it seems to me it's not a will contest to say we've got to decide which will is the real will. But it's not contesting the will. It's determining what is the will. There's a fine. That to me is not a will contest. I don't think those are the facts in this case. Those are not the facts, Your Honor. And the situation in your hypothetical, someone has to go to court to probate the will. They have to sponsor testimony, have to prove it up, and have to meet all the formalities of Texas law for proving up the will. And that gets handled in the probate court. That did happen here. If there was someone with standing, that's the key. If there's someone that had the right to object, an heir, someone that would actually have an interest that has not been waived or given up by contract like AL-3 did, they can come to the court and say, no, I actually have the right will. And then you have competing parties, none of whom have waived their rights, trying to prove up their interest. Here we have no competing party, no other party other than AL-3, who unequivocally gave up his right in standing to contest the will or the disposition of the property. At some point, enough is enough, and that's where we are. So I understand. When did AL-3, in your view, give up that right? When did AL-3? When did that happen? In 2010. In 2010. So I'm looking at the final judgment in paragraph 29. Correct. That's what I should refer to. In 2010, when that was agreed to, when you say he bartered that away, forgive me. If I've got the chronology wrong, you can correct me. Was there a will at that point? Or are we looking prospectively and saying, well, in the event that there's a probate and there will be a will, you can't come in and contest it? So, Your Honor, I'm going to start with a little bit of a qualification and say I'd be shocked if there wasn't a will. Okay. I personally wasn't there in 2010 and personally did not see a will, but it's my understanding there was a will. However, there's no provision in the settlement agreement or final judgment under which Al Hill Jr. was committing, here's my will and I'm never going to change it again. I'm not going to enter new wills. He was hoping to live for a very long time after 2010, and he had the right to change his will, which is probably why the last will in Testament is not defined in the agreement. It's not a defined term as I see it here. It's capitalized, but it's not a defined term. Right, but how do you define a living person's will by name? You can't put a name and a date on it because he can change it and has every right to change it. And so that's the situation that we have here. In this recording, state where the waiver of standing or giving up standing is found and what it says. Yes. Your Honor, two places. First, it's the settlement agreement and the final judgment. It's the settlement agreement, Section 3, Paragraph 1F, and examples on page 30675 of the record. It says, F, no contest of Al, Jr.'s last will in Testament. Al III, Aaron, the grandchildren, and all of their descendants and heirs agree not to contest the last will in Testament of Al, Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property. So that's the settlement agreement. It gets both don't contest what we file and don't file anything of your own. It's the bookend. The word gives up standing. And the word standing comes from the district court's final judgment, which has been affirmed by this court and been actually affirmed, I think, on even collateral attempts of attack. The final judgment. I wanted to clarify. Yes. The word standing does not appear in that paragraph. The word standing does not appear in the paragraph. In the final judgment, the word standing appears as a heading, and then there are several paragraphs below it, one of which is the no contest clause, paragraph 29 on page 33112. You're referring to the judgment that he agreed with? Yes. And that a judgment that, well, maybe it's not fair to say he agreed with it. He certainly tried to collaterally attack and appeal it, but this court affirmed that judgment. And so that's a final judgment giving up his standing. Your Honor, we believe that what Al 3 is doing is a clear violation of the settlement agreement and the final judgment. If it's not, it's hard to imagine what these clauses cover. And at this point, we believe Judge Lindsey was well within his discretion when he entered the injunction. Plenty of warnings have been given, and as my opposing counsel has noted, there is an issue of attorney's fees, which is still pending before the magistrate judge. The word of attorney's fees is technically not before the court. However, I did want to flag it and do appreciate opposing counsel flagging it because the court's ruling on the merits of the contract issue supporting the injunction could potentially impact that other part of the case. We are asking, though, as part of this court's affirmance of the injunction, for a remand so that we can seek our attorney's fees for this appeal as well because this is a clear breach. Al 3 has been obstructing the estate for years. I believe we're at two years since Al Jr. passed away. If I heard correctly, I think it's two years to the day. At some point, the parties need to be able to move on. With all the warnings in this case, Your Honor, this is a good point to affirm the injunction and allow the parties to proceed with their discussions. Could I get back? Could I ask another question? Yes, Your Honor. Back to mootness. As I understood what you said, the part of the injunction that you claim is moot, and that's when you started talking about the probate court jurisdiction in the NRA Jackie case. So let's assume that I think you're correct about that. I would need to look back at the order of the probate court and see what it disposed of, what it governed. And if you're right, then it's done with. There's no challenge to that. It's over with. Yes. And so to the extent that Judge Lindsey's injunction sort of duplicated that, it is moot. The challenge to it is moot, right? To the orders, yes. The reason I'm asking is because I'm looking at the judge's order, the state court judge's order. This is the probate court order from October of 2018, and it says it is further order that Hill III shall not contest or otherwise oppose the admission of the last will and testament of Albert Gallatin Hill Jr. dated December 20, 2014. Yes. And then it gives a number of things explaining what he can't do. Correct. Now, that's pretty broad, right? And if I agree with you that the challenges to that order are moot now because the jurisdiction of the court is gone, I mean, I'd have to look for something that Judge Lindsey was doing that went above and beyond that to find that this appeal isn't moot. I know that's a long question. But, Your Honor, I think I agree with what you're saying if I understood the question because Judge Lindsey's order on the ability to appeal from the probate court order, that's moot. Regardless of what's in the probate court order, and it is broad, it's correct too. There's additional orders that were entered that day probating the will and allowing the state to move forward. That's all moot. What the only part of the injunction order that's not moot or, I'm sorry, I think that's not moot from Judge Lindsey is the forward-looking portion to prevent Al III from trying the next stunt given all the things that have happened up to date. Thank you. Great. Your Honor, unless there's any more questions, I'll yield back the last 15 seconds of my time. Thank you. about the two different wills. The two different wills is there's one will that was admitted into probate court, and then there's another will that was attached to an affidavit of Tom Dee's, which purports to be the true and correct copy of Al Hill Jr.'s will dated November 2014. And there are discrepancies between those two. There are discrepancies in the signature. There's discrepancies. There's some signature in the signature block. There's some clearly not his handwriting or somebody else's handwriting. There are some initials on pages that are not present in the will that was provided in the probate court versus the one that was also purported by the appellees in this case to be the true and correct version of the will. And the record site just for the court is 47725, 47728, and then the will in the probate court was 45344. I'd also just – I understand that the argument is that my client has been a vexatious litigant or that that is kind of tainting some of these proceedings, but it goes both ways, and I just need to point that out because we say in our brief – we point out in our brief certain things that doesn't make it right or good, but what about your response? Do you have a response to the argument that when the probate court entered its order, which you appealed and then the appellate court lost its plenary jurisdiction, that just didn't evaporate the appeal. That also made the probate court order essentially unreviewable, which makes your appeal to the extent you're challenging that moot. Two points. I have not had a chance to read the Jackie case. Okay. But my point would be that would be – if, in fact, that is true, if that is accurate, that should be a decision made by the Texas state courts. That if the – that part of the problem – We have to make that determination as a matter of our own jurisdiction because we can't enter an order that awards the prevailing party effectively no relief because we don't have jurisdiction to do that. Well, but as pointed out by opposing counsel, part of the injunction by both Judge Lindsey and the order in the probate court is prospective. It prevents us from taking action in the probate court. That is a – you're exactly right. Beyond the probate court's order. Exactly. And that is a very broad relief that this court certainly has jurisdiction over, that we could have some relief, and that's the – Well, you were correct that I heard the other side concede that, but, I mean, you know, we have to determine mootness on our own part. Sure. The other point I would make, again, which I started to make before my time ran out, is I just wanted to dovetail back to the requirements of the injunction itself requiring irreparable harm. And we cited several cases in our brief that litigation expense itself, even if substantial litigation expense, is not irreparable harm. We cite the Bancroft clothing case, 415 U.S. 1. If you remain deprived of your benefit of the bargain in a no contest clause, irreparable harm. I mean, you're never going to get back all the time and hassle involved in a will contest proceeding. This is the chicken and the egg, again, because if, in fact, this is not a valid will, much like the arbitration clause I mentioned earlier with a forged signature, then there is no irreparable harm. If we're wrong, if it's wrong on that issue, the only harm is attorney's fees. And that simply is not the court has made clear that that is not irreparable harm in which an injunction can be issued. Now, there could be some other relief, perhaps, but not injunctive relief, the extraordinary remedy of injunctive relief. And I think that's important as the court considers these issues as well. I'll do the same unless the court has additional questions. I'll yield back my 15 seconds. Thank you. Thank you very much.